United States District Court
Southern District of Texas
**ENTERED**
September 02, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| TOPSOE, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00033 |
| | § | |
| CASALE US, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Plaintiff Topsoe, Inc. ("Topsoe" or "Topsoe Inc.") has sued Defendants Casale US, Inc. and Casale S.A. (collectively, "Casale"). Topsoe (1) seeks a declaratory judgment that Casale SA's U.S. Patent No. 11,286,168 (the '168 Patent) is unenforceable under the doctrine of inequitable conduct; (2) asserts unfair competition and false advertising claims under the Lanham Act against Casale; and (3) asserts a common law unfair competition claim against Casale.

There are three motions to dismiss pending before me. *See* Dkts. 31, 34, 64 (sealed); Dkts. 38, 39, 107 (redacted). They are brought under Rules 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim). For the reasons discussed below, I recommend that the motions be denied as to Casale SA but granted as to Casale US.

### BACKGROUND

Topsoe is the U.S. subsidiary of Danish company, Topsoe A/S, a supplier of chemical processing solutions and related technology. Topsoe A/S owns U.S. patents in the field of low-carbon ammonia technology. Topsoe is the exclusive licensee of Topsoe A/S's patent rights in the United States. One of the technologies owned by Topsoe A/S and licensed by Topsoe is a blue or low-carbon ammonia process, which is used to reduce greenhouse gases emitted during the process of creating ammonia.

Sister companies Casale US, a Texas corporation with its principal place of business in Houston, and Casale SA, a Swiss company, are direct competitors of Topsoe and Topsoe A/S. "[I]n 2019, Casale [SA][1] filed for a U.S. patent application, claiming to have 'invented' features of a low carbon ammonia process" that Topsoe alleges have "been used in Topsoe[ A/S]'s own process for decades." Dkt. 28 at 2. The '168 Patent issued on March 29, 2022. Topsoe alleges that "Casale [SA misused] Topsoe's information by including it in a patent application and misrepresenting that it had been developed by Casale [SA]." *Id.* Topsoe further alleges that "Casale set out to deliberately disrupt Topsoe's customer relationships, falsely claiming that it owns technology that was developed by Topsoe, that Topsoe infringes its patents, and that any customer employing Topsoe's technology would be infringing its patents as well." *Id.* at 3. I recount the pertinent facts below.

On November 9, 2022, Lorenzo Pennino, the head of Casale SA's Commercial Division in Switzerland, sent via email a letter addressed to one of Topsoe's potential customers in Europe, referencing a project that the customer was planning in North America. In the first two short paragraphs of the letter, Pennino described Casale SA's patent rights and the underlying technology. Pennino then referenced a paper written by Topsoe[2] and presented at a recent symposium in Chicago (the "Chicago Paper"):

> This looks to fall within the scope of protection of our mentioned patent. A copy of said paper is enclosed for your convenience.
>
> Should you have any question with regard to the relationship between the above-mentioned project and the patent rights of Casale, we remain at your disposal to clarify.[3]

---

[1] Only Casale SA applied for and is the holder of the '168 Patent. *See* Dkt. 3 at 1. I offer this clarification because, apart from six pages comprising sections titled "The Parties" and "Jurisdiction and Venue," Dkt. 28 at 3–9, Topsoe refers to Casale US and Casale SA interchangeably as "Casale" throughout the First Amended Complaint.

[2] It is unclear from the record whether this paper was authored by Topsoe or Topsoe A/S.

[3] The parties have "redacted" this letter by blacking out the entire text of the letter. Although I allowed this and other redactions at the time, I have since come to realize that the redactions are excessive. None of the material that I cite in this memorandum and

Dkt. 64-4 at 3 (sealed); Dkt. 107-4 at 3 (redacted). That same day, a Casale SA employee forwarded the letter directly to the North American sales representative for Topsoe's European customer. *See* Dkt. 74-36 (sealed).

On February 24, 2023, Casale SA's attorney, Riccardo Biazzi, sent a similar letter to "Haldor Topsoe A/S" in Denmark "on behalf of Casale SA." Dkt. 64-5 at 2 (sealed); Dkt. 107-5 at 2 (redacted). Biazzi did not mention Topsoe Inc.[4] in his letter. After referencing the Chicago Paper, describing Casale SA's understanding of Topsoe A/S's technology, and recounting Casale SA's own patent rights, Biazzi wrote:

> Therefore, we are of the opinion that [Topsoe A/S's] process . . . includes all the features recited, at least, in the independent claims of [Casale SA's] patents. This means the process cannot be used commercially without a written consent of Casale SA.
>
> With a view to resolve this matter amicably, we look forward to receiving your feedback in this respect within one month.

*Id.*

On March 23, 2023, Robert Riddle of Reed Smith LLP responded to Biazzi's February 24, 2023 letter on behalf of "Haldor Topsoe." Dkt. 31-21 at 2 (sealed); Dkt. 38-15 at 2 (redacted). Riddle has filed a declaration in this matter, stating that he "responded on behalf of both Topsoe, Inc. and Topsoe A/S."[5] Dkt. 96-1 at 2 (sealed); Dkt. 118-1 at 2 (redacted). Yet, Riddle did not mention Topsoe Inc. or

---

recommendation should be redacted. I will soon issue an order requiring the parties to revise and reduce the previously approved redactions considering this memorandum and recommendation.

[4] For clarity, I refer to Topsoe Inc. and Topsoe A/S (formerly Haldor Topsoe A/S) by their full names when recounting the correspondence and meetings involving the parties' counsel.

[5] Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct generally prohibits a lawyer from acting as both an advocate and witness in the same adjudicatory proceeding. A notable exception, however, is when the lawyer's "testimony relates to the nature and value of legal services rendered in the case." *See* Rule 3.08(a)(3). Although Riddle's declaration speaks to a contested issue in this case—whether Topsoe has standing to pursue its claims—it nevertheless falls within Rule 3.08(a)(3)'s exception because Riddle is describing the nature of the services he provided.

state that Topsoe Inc. was included within "Haldor Topsoe" in his March 23, 2023 letter to Biazzi. Riddle requested that Biazzi "provide the claim numbers Casale believes to be at issue, as well as the factual basis for Casale's belief that [Topsoe A/S's] process includes each feature recited in those claims. For example, a claim chart setting forth this information would be helpful to evaluate Casale's assertions." Dkt. 31-21 at 2 (sealed); Dkt. 38-15 at 2 (redacted).

On June 1, 2023, Biazzi responded to Riddle by letter. Biazzi began by recounting his understanding that Riddle was "dealing with this matter on behalf of Haldor Topsoe." Dkt. 31-22 at 2 (sealed); Dkt. 38-16 at 2 (redacted). Biazzi did not mention Topsoe Inc. in this letter. Biazzi copied a diagram from the Chicago Paper that Casale SA believed, when compared to the '168 Patent, made it "self-evident that [Topsoe A/S's] process includes all features of [claim 1 of the '168 Patent]." *Id.* at 3. Biazzi continued: "It is [Casale SA's] understanding that [Topsoe A/S's] process includes also the features of, at least, claims No. 2, 5, 10, 19, 20 of US '168." *Id.* Biazzi also called into question the similarity to claims 3, 4, 7, and 21. *See id.* In closing, Biazzi wrote: "Based on the above, we believe that a full claim chart is not necessary because, at least, the match with claim 1 is apparent." *Id.*

On June 13, 2023, Riddle responded to Biazzi by letter. Riddle accused Biazzi of "omit[ting] many important details" from his letters. Dkt. 31-23 at 2 (sealed); Dkt. 38-17 at 2 (redacted). Riddle wrote: "We find these omissions, as well as the assertion of patent infringement, to be made in bad faith, fraudulent, and anticompetitive." *Id.* Riddle requested "a teleconference between the parties' respective business principals and counsel to have a candid dialogue about the issues raised thus far." *Id.* After reviewing a preliminary analysis that "Casale's patents [are] questionable at best, and unenforceable regardless," Riddle expressed his concern that "Casale may have had communications with customers making allegations similar to those made in [Biazzi's previous letters to Topsoe A/S]." *Id.* at 4. Riddle demanded "a prompt response advising whether Casale, or

its representatives, have had such communications with customers." *Id*. Riddle did not mention Topsoe Inc. in his June 13, 2023 letter.

On September 15, 2023, the parties held a video conference. Although Topsoe Inc.'s Product Line Director for Ammonia and Topsoe Inc.'s in-house counsel attended this videoconference, there is no evidence that Casale SA knew that these individuals were affiliated with Topsoe Inc., and it is undisputed that no one from Casale SA requested that anyone from Topsoe Inc. attend the call.

The parties held another call on November 9, 2023. Although Topsoe Inc.'s in-house counsel attended, only Casale SA's and Casale US's outside counsel participated. The parties discussed "trying to resolve the dispute through a business arrangement." Dkt. 96-1 at 4 (sealed); Dkt. 118-1 at 4 (redacted). According to Riddle's declaration, "nobody on the Casale side expressed any concern at having a Topsoe Inc. representative on the call or stated that Casale intended its allegations of infringement to be addressed to Topsoe A/S only." *Id*.

Topsoe instituted this lawsuit on January 31, 2024. Topsoe seeks a declaration that the '168 Patent and all related patents and applications of its family (collectively, the "Disputed Patents") are unenforceable because of Casale SA's alleged fraud in procuring the '168 Patent. Topsoe also seeks an injunction against Casale asserting the Disputed Patents any further, and damages for Casale's asserting its allegedly unenforceable patents, false statements, and unfair competitive practices.

Casale's motions to dismiss raise a myriad of interlocking issues, including:

- Whether Topsoe has standing to bring its claims;
- Whether Topsoe's allegations support disregarding the corporate forms of Casale SA and Casale US;
- Whether this court has personal jurisdiction over Casale SA;
- Whether there is a substantial controversy between Topsoe and Casale US such that Casale US is a proper party; and

- Whether, assuming all of the above questions are answered in favor of subject matter and personal jurisdiction, Topsoe has plausibly alleged each of its claims against Casale.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, I begin by addressing Casale's Rule 12(b)(1) motion.

## RULE 12(b)(1) MOTION TO DISMISS

### A.    LEGAL STANDARD

Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of a federal district court to hear a case. A claim is properly dismissed for lack of subject matter jurisdiction when "the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation modified).

Where, as here, the underlying merits of an action involve patent infringement and/or validity, federal district courts are bound to follow the law of the Federal Circuit, which has "exclusive subject matter responsibility" over questions of patent law. *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991). "The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

There are two types of challenges to subject matter jurisdiction: "facial" attacks and "factual" attacks. *Id.* at 1584. When a Rule 12(b)(1) motion poses "a 'facial' attack, which merely asserts that the pleading's allegations, even if true, are not sufficient to support jurisdiction . . . , the well-pled allegations in the complaint are accepted as true and are viewed in a light favorable to the [plaintiff]." *Nat'l Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F. Supp. 2d 505, 510 (N.D. Tex. 2009) (quoting *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583). But when "a 'factual' attack is presented," which "denies or controverts the factual basis of the subject matter jurisdiction alleged in the pleading . . . , only uncontroverted jurisdictional

allegations of fact are accepted as true, and the court is free to review evidence outside of the pleadings to resolve jurisdictional factual disputes." *Nat'l Presort*, 663 F. Supp. 2d at 510 (quoting *Cedars-Sinai*, 11 F.3d at 1583–84).

**B.   ANALYSIS**

In attacking this court's subject matter jurisdiction, Casale first argues that Topsoe lacks standing to bring its declaratory judgment claim because Casale SA communicated only with Topsoe A/S, not Topsoe Inc., concerning the '168 Patent, meaning there is no case or controversy between them. Second, regarding Topsoe's unfair competition claims, Casale contends that "even if Topsoe Inc. were the proper plaintiff, it has failed to allege (or show, now that discovery has commenced) that it has an actual or imminent injury based on [Casale's] alleged actions." Dkt. 64 at 7 (sealed); Dkt. 107 at 7 (redacted). Finally, Casale argues there is no controversy between Topsoe and Casale US.

### 1.   *Whether Topsoe Has Declaratory Judgment Standing*

#### a.   **The contours of declaratory judgment standing**

The source of federal courts' subject matter jurisdiction is found in Article III of the U.S. Constitution, "which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007) (quoting U.S. Const., art. III, § 2, cl. 1). The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has "explained that the phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

To present "a case of actual controversy" in a declaratory judgment action, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be "real and substantial and admit of

specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quotations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

"[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk*, 480 F.3d at 1381. Yet, "Article III does not mandate that the declaratory judgment defendant have threatened litigation or otherwise taken action to enforce its rights before a justiciable controversy can arise." *Danisco U.S., Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014). An actual case or controversy can exist "even in situations in which there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights." *Id.* Declaratory judgment jurisdiction "will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case." *SanDisk*, 480 F.3d at 1381.

### b.    Relevant factual determinations

Before applying these principles to the circumstances of this case, I must make a few factual determinations. First, Topsoe contends that "Casale *did* interact directly with Topsoe Inc." Dkt. 96 at 13 (sealed); Dkt. 118 at 13 (redacted). Although literally true, it is legally irrelevant because any interactions between Topsoe and Casale SA stemmed from Topsoe's affirmative actions, not Casale SA's affirmative actions. Individuals from Topsoe participated in the September 15, 2023 video conference that included representatives of Casale SA. But there is nothing in the record to indicate that anyone from Casale SA *knew* that they would—or more importantly, *wanted* to—speak with Topsoe's representatives. It

is *Casale SA's* affirmative actions that matter here. *See SanDisk*, 480 F.3d at 1381. "The Federal Circuit has looked unfavorably on conduct by declaratory judgment plaintiffs that might seem calculated to instigate a controversy." *Glob. Tubing LLC v. Tenaris Coiled Tubes LLC*, No. 4:17-cv-3299, 2018 WL 3496739, at *4 (S.D. Tex. July 20, 2018). Thus, absent some indication that Casale SA invited Topsoe's representatives to the September 15 and November 9, 2023 conference calls—and there is no such evidence in the record—the unsolicited participation of Topsoe's representatives is not an affirmative act by Casale SA that gives rise to declaratory judgment standing. Likewise, Topsoe's "ask[ing] whether Casale had threatened any of Topsoe's customers" was not a purposeful action *by Casale SA* that would give rise to declaratory judgment standing. Dkt. 96 at 14 (sealed); Dkt. 118 at 14 (redacted).

Second, Topsoe contends that "Casale directly contacted Topsoe Inc. multiple times through [Casale's] outside counsel to threaten enforcement of its '168 patent and the corresponding '067 European patent." *Id.* Topsoe bases this argument on the fact that "Riddle has always represented Topsoe, Inc. and Topsoe A/S." *Id.* True as that may be, what matters is whether *Casale SA* knew it to be true. Riddle attempts to convince the court—through a six-page declaration with seven attachments—that when he wrote in his March 23, 2023 letter that he was responding on behalf of "Haldor Topsoe," Casale SA must have understood that to include Topsoe because "both Topsoe Inc. and its Danish parent company, Topsoe A/S, used to have the word 'Haldor' in their titles." Dkt. 96-1 at 4 (sealed); Dkt. 118-1 at 4 (redacted). Riddle then walks through the history of these entities' name changes, acknowledging "that when Haldor Topsoe Inc. changed its name to simply 'Topsoe Inc.' in 2022, for unknown reasons, the Texas Secretary of State required them to record the name change not from 'Haldor Topsoe Inc.' to Topsoe Inc., but from their original name, Catalytic Resources Inc., to Topsoe Inc." *Id.* at 5. If anything, this lengthy explanation merely reaffirms that Casale SA had no reason to understand, absent extensive background knowledge and research, that

Riddle represented Topsoe in addition to Topsoe A/S. Finding nothing in the record to suggest that Casale SA should have known that Riddle represented Topsoe, I reject Topsoe's contention that "Casale directly contacted Topsoe Inc." Dkt. 96 at 14 (sealed); Dkt. 118 at 14 (redacted).

Nor do I find anything in the record to suggest that (1) Casale SA should have known that the email address to which Casale SA directed its February 24, 2023 letter, patent@topsoe.com, was used by both Topsoe A/S and Topsoe; or (2) "Casale would have known . . . from its competitive intelligence gathering" that its February 24, 2023 letter "directly affected Topsoe Inc." *Id.* at 16. Having made these factual determinations, I turn to whether Topsoe nevertheless has standing to bring its declaratory judgment action.

### c.    Applying declaratory judgment standing principles to the facts of this case

The Federal Circuit held in *SanDisk*:

> that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

480 F.3d at 1381. In that case, the patentee "sought a right to a royalty under its patents based on specific, identified activity by SanDisk" and "communicated to SanDisk that it had made a studied and determined infringement determination and asserted the right to a royalty based on this determination." *Id.* at 1382. "SanDisk, on the other hand, maintained that it could proceed in its conduct without the payment of royalties." *Id.* This, the Federal Circuit held, was enough to create "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation omitted).

Concurring in the decision, Circuit Judge William C. Bryson observed that "under the court's standard virtually any invitation to take a paid license relating

to the prospective licensee's activities would give rise to an Article III case or controversy if the prospective licensee elects to assert that its conduct does not fall within the scope of the patent." *Id.* at 1384 (Bryson, J., concurring). Indeed, Judge Bryson saw "no practical stopping point short of allowing declaratory judgment actions in virtually any case in which the recipient of an invitation to take a patent license elects to dispute the need for a license and then to sue the patentee." *Id.* Thus, *SanDisk* does seem to have "effect[ed] a sweeping change in [Federal Circuit] law regarding declaratory judgment jurisdiction." *Id.* at 1385.

Given this "sweeping change," I feel compelled to conclude that Topsoe has standing to pursue its declaratory judgment claim. In coming to this conclusion, I am guided by the Federal Circuit's decision in *Allied Mineral Products, Inc. v. Osmi, Inc.*, 870 F.3d 1337 (Fed. Cir. 2017), a case not cited by either party. These are the relevant facts of that case:

> [Allied] sued . . . [Stellar], seeking a declaratory judgment that [Allied] did not infringe Stellar's U.S. Patent No. 7,503,974 (the "'974 patent"), the patent is invalid, and Stellar committed inequitable conduct. . . .

> . . . Stellar and Allied are American companies; . . . [Ferro and Pyrotek] are Allied's Mexican distributors. . . . Stellar sent notice letters to Ferro and Pyrotek accusing them of infringing Stellar's Mexican Patent No. 279757 (the "Mexican Patent"). Allied manufactures the products accused of infringement in the United States, which are then sold in Mexico by Ferro and Pyrotek. Allied sells the same product in the United States under a different name.

> Allied's U.S. counsel responded to Stellar's notice letters on behalf of Ferro and Pyrotek. Allied identified itself as the manufacturer of the accused products and argued that the products do not infringe the Mexican Patent. Stellar never responded to Allied's letter. Instead, Stellar filed infringement actions against Ferro and Pyrotek in Mexico, accusing Ferro and Pyrotek of infringing at least claim 16 of the Mexican Patent. Claim 16 of the Mexican Patent is a Spanish translation of claim 16 of the '974 patent.

> Allied filed a declaratory judgment action against Stellar in the Southern District of Florida, seeking a declaratory judgment of: (1) non-infringement of the '974 patent; (2) invalidity; [and] (3) unenforceability due to inequitable conduct . . . .

*Id.* at 1338–39.

In affirming the district court's dismissal for lack of subject matter jurisdiction, the Federal Circuit found several facts significant. First was that "Stellar has not directed any actions towards Allied, nor has it litigated or threatened litigation in the United States or on its '974 patent." *Id.* at 1339. Similarly, Casale SA has not directed any actions towards Topsoe, nor has it litigated or threatened litigation in the United States on its '168 patent. The most threatening statement Casale SA made in its correspondence with Topsoe's customer was to say that the Chicago Paper "looks to fall within the scope of protection of our mentioned patent." Dkt. 64-4 at 3 (sealed); Dkt. 107-4 at 3 (redacted). And the most threatening statement Casale SA made to Topsoe A/S was: "Therefore, we are of the opinion that [Topsoe A/S's] process . . . includes all the features recited, at least, in the independent claims of [Casale SA's] patents. This means the process cannot be used commercially without a written consent of Casale SA." Dkt. 64-5 at 2 (sealed); Dkt. 107-5 at 2 (redacted). At no point did Casale SA mention litigation. To the contrary, Casale SA concluded its letter to Topsoe A/S by stating its "view to resolve this matter amicably." *Id.* If these were the only factors the Federal Circuit considered in its analysis, I would conclude that there is no controversy between Casale SA and Topsoe. But the remaining factors tip the balance in favor of holding that Topsoe has declaratory judgment standing.

The Federal Circuit went on to observe that "All of Stellar's conduct [was] directed towards . . . Mexican entities, and that contact was limited to Stellar's Mexican Patent and potentially infringing acts in Mexico." *Osmi*, 870 F.3d at 1339. Here, however, Casale SA's conduct was not so limited. While Casale SA sent letters to only European entities, the November 9, 2022 letter that Casale SA sent to Topsoe's customer specifically mentioned that customer's *North American* project and Casale SA's *U.S.* patent. *See* Dkt. 64-4 at 2 (sealed); Dkt. 107-4 at 2 (redacted). Indeed, Casale SA forwarded a copy of that letter to the North American sales representative for Topsoe's customer referencing the North American project. *See*

Dkt. 74-36 (sealed). And, unlike Stellar, who "never responded to Allied's letter," *Osmi*, 870 F.3d at 1339, Casale SA *did* respond to Topsoe's *American* counsel. Casale SA may not have known that Riddle represented both Topsoe A/S and Topsoe, but Casale SA unquestionably knew that Riddle represented Topsoe A/S's interests *in the United States*, because that is where Riddle's letter originated. These facts suggest that Casale SA was willing to enforce its U.S. patent rights.

Casale SA overemphasizes that it never demanded a license from Topsoe directly. "[Topsoe]'s allegations indicate that [Casale SA] knew about [Topsoe A/S's process] and had devoted at least some effort to studying it." *Glob. Tubing*, 2018 WL 3496739, at *5. In his June 1, 2023 letter to Riddle, Biazzi copied a diagram from the Chicago Paper that Casale SA believed, when compared to the '168 Patent, made it "self-evident that [Topsoe A/S's] process includes all features of [claim 1 of the '168 Patent]." Dkt. 31-22 at 3 (sealed); Dkt. 38-16 at 3 (redacted). Although Biazzi wrote that "[t]he same holds for [European Patent] 3 583 067 whose claim 1 is similar to claim 1 of US '168 Patent," the focus on the '168 Patent— a *U.S.* patent, which can only be enforced *in the United States*—was clear. *Id.* In making this claim of infringement against a U.S. patent—against the backdrop of the Federal Circuit's evolved declaratory judgment standing principles—Casale SA subjected itself to a possible declaratory judgment action from *whoever* has the exclusive rights to license Topsoe A/S's process in the United States, which is the only place the '168 Patent could be infringed. "Topsoe, Inc. is the exclusive licensee . . . of those patent rights in the United States." Dkt. 28 at 10.

I find this to be a close call, but the facts here fit into *SanDisk*'s holding: Casale SA "assert[ed] rights under [the '168 Patent] based on [the North American project that Topsoe is undertaking with its customer]"; those rights could be infringed only by Topsoe, the exclusive licensee of Topsoe A/S's technology in the United States; and Topsoe "contends that it has the right to engage in the accused activity without license." *SanDisk*, 480 F.3d at 1381. And, as in *Global Tubing*, Casale SA insinuated to Topsoe's customer that Topsoe had copied Casale SA's

product. *See Glob. Tubing*, 2018 WL 3496739, at *4. My colleague, Judge Keith Ellison, found that these "alleged statements in the marketplace suffice[d] to make it [a real and immediate controversy]." *Id*. The same result should follow here.

Casale attempts to distinguish *Global Tubing* by observing that, in that case, "the defendant **had** directly accused the declaratory judgment plaintiff of infringement during proceedings before the [U.S. Patent and Trademark Office]," whereas "Defendants here have never accused Topsoe, Inc. of infringement." Dkt. 101 at 11 (sealed); Dkt. 122 at 11 (redacted). But Casale SA *has* accused Topsoe A/S's technology of infringing Casale SA's U.S. patent, and Topsoe is the exclusive licensee of that technology in the United States. *See* Dkt. 31-22 at 2 (sealed); Dkt. 38-16 at 2 (redacted). Moreover, in *Global Tubing*, it was the defendant's statements in the marketplace that Judge Ellison found most relevant, not the pre-issuance conduct. *See* 2018 WL 3496739, at *4 ("On its own, [the defendant]'s pre-issuance conduct might not be enough to make this a real and immediate controversy, but its alleged statements in the marketplace suffice to make it so.").

I have wrestled with what the outcome should be here. But I am led by the Supreme Court's refrain that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be "real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quotations omitted). Casale SA made the dispute definite, concrete, and adverse when it told Topsoe's customer—in the context of that customer's North American project—that Topsoe's technology, detailed in the Chicago Paper, fell "within the scope of protection of [the '168 Patent]." Dkt. 64-4 at 3 (sealed); Dkt. 107-4 at 3 (redacted). The North American project is real, the dispute is substantial, and an opinion on Topsoe's declaratory judgment claim would not be advisory. For these reasons, Topsoe has standing to bring its declaratory judgment claim. To hold otherwise would be to sanction the "scare-the-customer-and-run tactics" that "led to enactment of the Declaratory

Judgment Act." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (quotation omitted).

### 2. *Topsoe's Constitutional Standing to Bring Its Unfair Competition Claims*

Casale next argues that Topsoe lacks Article III standing to bring its unfair competition claim because Topsoe "has not identified any factual evidence, beyond mere conclusory statements, supporting its claim that Defendants' alleged conduct caused Topsoe Inc. harm." Dkt. 64 at 15 (sealed); Dkt. 107 at 15 (redacted). The three requirements of Article III standing are familiar: "The plaintiff must have [1] suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is [2] fairly traceable to the challenged action of the defendant and [3] likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Article III standing is not to be confused with statutory standing. In contrast to Article III standing, statutory standing is "a straightforward question of statutory interpretation" that asks (1) whether the plaintiff's interests "fall within the zone of interests protected by the law invoked" and (2) whether the plaintiff's "injuries are proximately caused by violations of the statute." *Lexmark*, 572 U.S. at 129, 132 (quotation omitted). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Casale has not argued that Topsoe lacks statutory standing. Rather, Casale advances its standing argument in a motion brought under only Rule 12(b)(1), with repeated references to Article III and zero references to statutory standing or the Lanham Act's "zone of interests." *See* Dkt. 64 (sealed); Dkt. 107 (redacted). Thus, I have no occasion to consider whether Topsoe lacks statutory standing—only whether Topsoe lacks constitutional standing.

The distinction between constitutional and statutory standing is important because, in determining whether Topsoe has constitutional standing, I may look to "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). In "[l]ooking beyond Topsoe's [First Amended Complaint]" to Topsoe's initial disclosures, Casale has lodged a factual attack on subject matter jurisdiction. Dkt. 64 at 16 (sealed); Dkt. 107 at 16 (redacted). That empowers this court to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413 (quotation omitted). After reviewing the evidence, I am more than satisfied that Topsoe has constitutional standing.

In its initial disclosures, Topsoe claims that Casale's actions "caused damages because they—at the very least—delayed the project [with Topsoe's customer] by many months." Dkt. 64-12 at 8 (sealed); Dkt. 107-12 at 8 (redacted). Topsoe is not alleging a future delay. It claims the project has already been delayed, and it offers a method for calculating those damages. *See id.* Casale does not dispute that the project has been delayed or that the "temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." Dkt. 96 at 22 (sealed) (quoting *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)); Dkt. 118 at 22 (redacted). Rather, Casale contends Topsoe cannot prove that delay is attributable to Casale's actions.

"[C]ausation and redressability[] are usually flip sides of the same coin. Causation requires the plaintiff to show that the injury was likely caused by the defendant, and redressability requires the plaintiff to demonstrate that the injury would likely be redressed by judicial relief." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2133 (2025) (citation modified). A money judgment against Casale for the value of the delay would redress Topsoe's injury and Casale has not argued otherwise. Rather, Casale argues that Topsoe cannot *prove* that the project was delayed because of Casale's actions. In other words,

Casale argues that this court lacks subject matter jurisdiction because Topsoe's claims fail on the merits. This, however, is not a basis for dismissal for lack of subject matter jurisdiction.

As the Fifth Circuit has explained: "Where the factual findings regarding subject matter jurisdiction are intertwined with the merits, . . . the case should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is immaterial or is wholly insubstantial and frivolous." *Clark v. Tarrant County*, 798 F.2d 736, 741–42 (5th Cir. 1986). Casale has not shown that Topsoe's claim is immaterial or wholly insubstantial and frivolous. Rather, Casale seeks dismissal because after "extensive discovery," Topsoe cannot "make a showing that rises beyond mere speculation." Dkt. 101 at 14 (sealed); Dkt. 122 at 14 (redacted). That is a merits argument that is best addressed at summary judgment after *full* discovery. Thus, Topsoe has standing to pursue its unfair competition claim.

### 3.   *Whether There Is a Controversy Between Topsoe and Casale US*

Casale's final argument concerning subject matter jurisdiction is that "there is no dispute between Casale US and Topsoe Inc. for purposes of the declaratory judgment claim or the unfair competition claim." Dkt. 64 at 20 (sealed); Dkt. 107 at 20 (redacted). Casale makes this argument because, beyond the jurisdictional alter ego allegations, the only substantive allegations Topsoe brings against Casale US are conclusory:

> Casale US would have been aware of and involved in the pursuit of potential Topsoe customers and would have been aware of and participated in these wrongful activities. Casale SA, in collaboration with Casale US, is actively and forcefully using its U.S. patent in a competitive context within the form of this suit.

Dkt. 28 at 5. As discussed above, these are merits arguments that should not be resolved through a Rule 12(b)(1) motion. *See Clark*, 798 F.2d at 741–42.

* * *

Having established this court's subject matter jurisdiction, I turn to Casale SA's motion to dismiss for lack of personal jurisdiction.

## RULE 12(b)(2) MOTION TO DISMISS

Casale SA, a Swiss company, argues that Topsoe cannot establish that Casale SA is subject to personal jurisdiction in Texas because Casale SA has no contacts with Texas. Topsoe counters that (1) Casale SA has sufficient minimum contacts with Texas; (2) even if it does not, Casale US, which is at home in Texas, is the alter ego of Casale SA such that Casale US's contacts can be imputed to Casale SA to establish personal jurisdiction; and (3) in the alternative, this court may exercise personal jurisdiction over Casale SA under Rule 4(k)(2). I need to reach only the first argument, as Casale SA has sufficient minimum contacts with Texas.

### A.   LEGAL STANDARD

Rule 12(b)(2) allows a party to challenge the district court's exercise of personal jurisdiction. The United States Supreme Court has recognized two types of personal jurisdiction: general jurisdiction[6] and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). Topsoe asserts only specific jurisdiction as to Casale SA. Specific jurisdiction demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). This inquiry is fact-intensive, and its touchstone is "whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quotation omitted). Defendants "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation modified).

The "determination of whether a [non-resident] defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second,

---

[6] General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

whether the assertion of jurisdiction is consistent with due process." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

"In brief, the due process inquiry requires that [I] determine whether [Casale SA] 'purposefully directed [its] activities at residents of' [Texas] and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* at 1545 (quoting *Burger King*, 471 U.S. at 472). These two factors—purposefully directed and "arises out of or relates to"—"comprise the 'minimum contacts' portion of the jurisdictional framework." *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018). The plaintiff bears the burden to establish these two factors. *See id.* "Satisfaction of these two conditions, while necessary, is not always sufficient to justify personal jurisdiction over the defendant. An additional fairness inquiry rounds out the determination whether personal jurisdiction can be exercised in a given case consistent with the Due Process Clause." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995).

The Supreme Court has identified several factors that speak to reasonableness and fairness. Relevant here are "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). "The burden befalls [Casale SA], as the source of the minimum contacts, to make a 'compelling case' that the exercise of jurisdiction in the [Southern] District [of Texas] would be unreasonable and unfair." *Jack Henry*, 910 F.3d at 1205.

Because Topsoe's "unfair competition claims [go] hand-in-hand with its patent infringement claims, arising out of the same facts, . . . it [is] appropriate to

apply Federal Circuit law in resolving the personal jurisdiction issue, even though [a state law claim for common law unfair competition is] involved." *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856–57 (Fed. Cir. 1999) (quotation omitted). "[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). I "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

## B.  ANALYSIS

"[A] single act can support [personal] jurisdiction, so long as it creates a substantial connection with the forum, as opposed to an attenuated affiliation." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (quotation omitted). Topsoe has identified such an act.

It is undisputed that on September 30, 2022, Pennino, Casale SA's Head of Commercial Division, emailed Casale US's employee in Texas, Chris Mancinelli, to inform Mancinelli that Casale was not on the short list for a project "somewhere on the TX cost [sic]." Dkt. 74-30 at 2 (sealed); Dkt. 84-30 at 2 (redacted). Pennino proposed to Mancinelli a "'strategic' idea to enter in the short list of licensors," including discussing "directily [sic] with [Topsoe A/S]" and its customer the technology patented by Casale SA. *Id.* These are the very communications at issue in this case.

The parties spill too much ink discussing whether Casale US is Casale SA's alter ego. It is the assumption of Casale US and Casale SA's corporate *separateness* that makes this September 30, 2022 email so significant. If Casale US is, as Casale SA argues, a separate company, then Casale SA's deliberate contact with a Texas corporation (Casale US), strategizing how to communicate with a shared customer and competitor about a Texas project—the communications that give rise to the

claims in this case—creates a substantial connection with Texas. Tellingly, Casale SA does not address this email in its reply. Rather, it characterizes its contacts with Texas as "sending a few employees to a conference in Texas once or twice a year" and bidding for work in Texas." Dkt. 69 at 20 (sealed); Dkt. 108 at 20 (redacted). That is a gross mischaracterization of the extent to which Casale SA worked in tandem with a separate Texas corporation (Casale US) to displace Topsoe as a competitor for the Texas project at issue, including strategizing about the allegations of infringement that give rise to each of Topsoe's claims.

While the September 30, 2022 email is itself a substantial connection with Texas, there are other contacts between Casale SA and Casale US. *See* Dkt. 74 at 14–16, 20–21 (sealed); Dkt. 84 at 14–16, 20–21 (redacted). These contacts do not make Casale US the alter ego of Casale SA. Rather, Casale SA's contacts are purposefully directed at a Texas resident (Casale US) and Topsoe's claims arise out of or relate to those contacts. This is more than enough to establish specific personal jurisdiction over Casale SA in Texas. As for whether the exercise of such jurisdiction would be reasonable and fair, Casale SA has not carried its burden to make a compelling case that it would not.

Casale SA argues that "the facts cited by Topsoe . . . to argue that Casale S.A. would not be burdened by a lawsuit in Texas are only supported by Topsoe's unverified complaint allegations." Dkt. 69 at 21 (sealed); Dkt. 108 at 21 (redacted). But "[t]he burden befalls [Casale SA], as the source of the minimum contacts, to make a 'compelling case' that the exercise of jurisdiction . . . would be unreasonable and unfair." *Jack Henry & Assocs.*, 910 F.3d at 1205. It is difficult to see how Casale SA could make such a case given that its predecessor previously filed suit in this district. *See* Dkt. 28 at 8 (citing *Ammonia Casale S.A. v M/V Skanderborg*, No. 4:00-cv-2121 (S.D. Tex.)).

Casale SA quotes *Asahi Metal Industries Co. v. Superior Court of California*, 480 U.S. 102, 114 (1987), for the proposition that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant

weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Dkt. 69 at 20 (sealed); Dkt. 108 at 20 (redacted). But *Asahi* concerned the litigation of a Taiwanese company's indemnity claim against a Japanese corporation in California state court where the Japanese corporation's only contact with California was delivering its product into the stream of commerce with the awareness that some of its products would reach California. That is a far cry from Casale SA's own connections to Texas.

Notwithstanding Casale SA's conclusory assertions otherwise, "Texas has an interest in maintaining a forum for its citizens who are injured within the State. [Topsoe, a Texas citizen,] has an interest in litigating in [its] home State." *Ethridge v. Samsung SDI Co.*, 137 F.4th 309, 314 (5th Cir. 2025). Thus, Casale SA is subject to personal jurisdiction in Texas.

* * *

Having dispensed with the jurisdictional challenges, I turn to Casale's Rule 12(b)(6) motion to dismiss.

## RULE 12(b)(6) MOTION TO DISMISS

### A.    LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "While [I must] generally construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff, [I am] not required to accept as true legal conclusions or unwarranted factual inferences." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (quotation omitted).

## B.  ANALYSIS

Casale argues that Topsoe's claims should be dismissed for failure to state a claim because Topsoe has (1) failed to adequately plead inequitable conduct, as required for Topsoe's declaratory judgment claim; and (2) has failed to allege unfair competition under the Lanham Act and Texas common law. I will address each of these arguments in turn.

### 1.  *Inequitable Conduct*

"Topsoe seeks a judgment declaring that the claims of the '168 Patent, and any related U.S. patents, are unenforceable under the doctrine of inequitable conduct." Dkt. 28 at 23. "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. Unlike validity defenses, which are claim specific, inequitable conduct regarding a single claim renders the entire patent unenforceable. Inequitable conduct has two separate requirements: materiality and intent." *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017) (citation modified); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO [U.S. Patent and Trademark Office].").

"Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen*, 575 F.3d at 1326 (citation modified). "Although 'knowledge' and 'intent' may be averred generally, [Federal Circuit] precedent . . . requires that the pleadings allege sufficient underlying facts from

which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327. This "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* Casale argues that "Topsoe has failed to allege sufficient facts regarding Casale SA's alleged wrongdoing to meet the heightened pleading requirements in *Exergen*." Dkt. 31 at 23 (sealed); Dkt. 38 at 23 (redacted).

Casale argues that "Topsoe overwhelmingly refers to 'Casale's' general knowledge of the alleged prior art references." *Id.* at 25. Topsoe does do that, and those allegations are insufficient. But Topsoe also makes specific allegations. First, Topsoe is clear as to the "who": Francesco Baratto and Raffaele Ostuni (the '168 Patent inventors), and Casale's CTO Ermanno Filippi "were aware of certain Topsoe and Casale prior art and the materiality of Topsoe and Casale prior art to the claims they were pursuing in the '168 Patent and intentionally withheld that information from the US PTO." Dkt. 28 at 35. This allegation stands in stark contrast to *Exergen*, where the pleading referred only "generally to 'Exergen, its agents and/or attorneys,' . . . but fail[ed] to name the specific individual associated with the filing or prosecution of the application issuing as the [patent in question], who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329. Here, Topsoe has named three specific individuals.[7] That is a sufficient identification of "who."

Second, Topsoe identifies "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material

---

[7] Topsoe also identifies attorneys Marcus Simon and Marco Zardi as individuals who were aware of material prior art and withheld information from the PTO. I agree with Casale that Topsoe advances no factual allegations that give rise to a reasonable inference that Simon or Zardi knew about the prior art in question. *See* Dkt. 69 at 35 (sealed); Dkt. 108 at 35 (redacted). I will not, however, strike the references to Simon and Zardi from Topsoe's complaint. Casale cites no legal basis for such a request, and doing so is unnecessary. The question here is whether Topsoe's declaratory judgment claim should survive the motion to dismiss stage, not whether references to a non-party should remain in a pleading.

omissions." *Id.* Topsoe identifies two independent claims of the '168 Patent: claim 1 and claim 21. *See* Dkt. 28 at 28. Topsoe identifies the limitations in those claims as "separating out the synthesis gas into two streams, one of which is then used as fuel." *Id.*at 29. Topsoe identifies specific portions of four withheld references that are relevant to those claims and limitations: (1) the portion of the 2009 FAI paper "stating that: 'an excess of synthesis gas is produced, and this excess synthesis gas is used as fuel in the primary reformer'"; (2) the portion of the 2009 FAI Annual Seminar presentation that includes a figure showing "the excess syngas being recycled back to the primary reformer as fuel"; (3) the IFFCO plant, in which "Topsoe's design included splitting a synthesis gas stream into two streams of the same composition so one stream could be used as a fuel"; and (4) 2012 MEGAMONNIA, which "discloses a process in which $CO_2$ is removed from synthesis gas and split into two streams, one stream intended for synthesis of ammonia and one stream intended for use as fuel." *Id.* at 30–31, 33–34.

Finally, Topsoe alleges facts that "give rise to a reasonable inference of scienter, including both (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1330. In *Exergen*, deceptive intent "was pleaded solely on information and belief." *Id.* (citation modified). That is not the case here. For example, Topsoe alleges that the IFFCO plants "are based on Topsoe's low carbon ammonia technology, including the splitting of a synthesis gas stream into two streams of the same composition in which one of the streams is used as fuel." Dkt. 28 at 11. Topsoe further alleges that "Casale gained detailed information about Topsoe's ammonia technology as part of a revamp project at IFFCO in 2014" in which "Casale was responsible for the design and supply of equipment for the revamp." *Id.* at 12. "As part of Casale's work on the IFFCO ammonia units, it . . . learned . . . that Topsoe's design included splitting a synthesis gas stream into two streams of the same composition so one stream could be used as a fuel." *Id.* Topsoe ties it all together by pointing out that "Filippi, Baratto and Ostuni

attempted to claim 'a method for revamping of an ammonia plant' and Casale's work on the IFFCO plant in India described above was a revamp." *Id.* Topsoe admittedly does not allege that Filippi, Baratto, or Ostuni worked at the IFFCO plant, but how could Topsoe know that? Casale stretches *Exergen*'s holding and Rule 9 beyond the bounds of reason. The facts that Topsoe has alleged are enough to give rise to a reasonable inference of scienter and gain access to full discovery.

Casale also argues that Topsoe fails to show that the withheld references are material and not cumulative, and that Topsoe "fail[s] to explain why the prior art references it has asserted discuss splitting the gas in a way that would be material to the patentability of all the claims." Dkt. 69 at 38 (sealed); Dkt. 108 at 38 (redacted). Yet, as Casale recognizes, Topsoe offers a reason for why these references would be material:

> (a) the three alleged prior art references disclose splitting a synthesis gas stream into two streams of the same composition so one stream could be used as a fuel; and (b) this must be material because (1) Casale S.A. overcame the examiner's rejection of two claims in the '168 Patent application by arguing the prior art did not disclose splitting the synthesis gas into two streams and using one as fuel and (2) Casale S.A. referenced the splitting the synthesis gas into two streams and using one as fuel in its letter to [Topsoe's customer].

Dkt. 69 at 36 (sealed); Dkt. 108 at 36 (redacted).

Casale argues that this reasoning "is just the sort of allegation that was rejected in *Exergen*." *Id.* at 38. It is not. The pleading in *Exergen* failed as to "material" and "not cumulative" because it did "not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329. But unlike in *Exergen*, Topsoe *does* "identify the particular claim limitations." *Id.* Specifically, Topsoe identifies claims 1 and 21. *See* Dkt. 28 at 28. Topsoe also, as discussed above, identifies the parts of the prior art references that are relevant to those limitations. *See id.* at 30–31, 33–34. Accordingly, Topsoe has adequately alleged inequitable conduct at this early pleading stage.

### 2.    *Lanham Act*

Topsoe brings claims against Casale for unfair competition and false advertising under §§ 43(a)(1)(A) and (B) of the Lanham Act. Casale challenges only the false advertising claim brought under § 43(a)(1)(B). *See* Dkt. 31 at 29 (sealed) (citing only § 43(a)(1)(B)); Dkt. 38 at 29 (redacted). Section 43(a)(1)(B) states, in relevant part:

> Any person who . . . *in commercial advertising or promotion*, misrepresents the nature, characteristics, quality, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

The Federal Circuit applies "the law of the regional circuit in which the relevant district court sits" when evaluating Lanham Act claims. *Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 3 (Fed. Cir. 2024). Thus, Fifth Circuit law governs Topsoe's claims. The Fifth Circuit has said:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (quotation omitted).

Casale says this claim should fail because "Topsoe has only alleged one communication with a customer" and one communication is not enough "to constitute 'advertising' or 'promotion' within the industry." Dkt. 31 at 30 (sealed); Dkt. 38 at 30 (redacted). Topsoe counters that "Casale gets the law wrong." Dkt. 74 at 40 (sealed); Dkt. 84 at 40 (redacted). Topsoe points out that in *Seven-Up*, the Fifth Circuit recognized: "'Where the potential purchasers in the market are

relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act.'" *Id.* at 40–41 (quoting *Seven-Up*, 86 F.3d at 1386). Here, Topsoe has alleged that "the relevant market for purchasers of low carbon ammonia technology is incredibly small, with limited customers offering only a small number of very large projects that will typically take years to install." Dkt. 28 at 38.

Casale retorts that Topsoe fails to "provide any context for what constitutes 'incredibly small' and does not allege that the only purchasing customer in the field is [the customer to whom Casale made the allegedly false statements]." Dkt. 69 at 41 (sealed); Dkt. 108 at 41 (redacted). Casale again stretches the law too far. Topsoe need not allege that its customer is the only customer in the field. Although the case on which the Fifth Circuit relied in stating that a single letter could constitute commercial advertising or promotion involved only "one potential customer," nothing in *Seven-Up* suggests that the Fifth Circuit's observation is so limited. *Seven-Up*, 86 F.3d at 1386 (citing *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1021 (S.D.N.Y. 1994)). Because "[m]otions to dismiss are viewed with disfavor and are rarely granted" in the Fifth Circuit, Casale's motion to dismiss Topsoe's § 43(a)(1)(B) false advertising claim should be denied. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

### 3.    *Common Law Unfair Competition*

Topsoe also asserts a common law unfair competition claim against Casale. "A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). A statement is "objectively baseless" when the "patents were obviously invalid or plainly not infringed." *Id.* at 1375. Casale's sole challenge to Topsoe's common law unfair competition claim is that Topsoe has failed to allege facts sufficient to suggest that

Casale's claims were objectively baseless. *See* Dkt. 31 at 31 (sealed); Dkt. 38 at 31 (redacted).

Topsoe alleges that Casale "filed the application for the '168 Patent with the US PTO on August 13, 2019, shortly after completing its work on revamping the IFFCO plant where Topsoe's technology had been installed." Dkt. 28 at 13. Taking this allegation as true, as I must, that—along with the numerous other allegations in Topsoe's 43-page complaint—would indeed make Casale's claims of infringement objectively baseless.

In its reply, Casale argues that its "alleged statements regarding the validity of the '168 Patent are not objectively baseless" because Casale "had a duly issued patent at the time it made them." Dkt. 69 at 41 (sealed); Dkt. 108 at 41 (redacted). But this argument relies on the assumption that Topsoe's inequitable conduct claim will be dismissed. *See id.* ("[O]nce the inequitable conduct claim is dismissed, Topsoe's allegations that Casale S.A. made objectively baseless claims are just conclusory and its unfair competition claims must be dismissed as well since they are based on the same facts."). For the reasons discussed above, Topsoe's inequitable conduct claim should not be dismissed. Accordingly, Topsoe's common law unfair competition claim should also survive the motion to dismiss stage.

### 4.    Topsoe's "Claims" Against Casale US

In Topsoe's 43-page complaint, there are a meager 23 references to Casale US, all of which appear in only the introductory sections regarding the parties, jurisdiction, and venue. *See* Dkt. 28 at 1–9. Topsoe contends that "group pleading is not prohibited where, as here, the complaint alleges or the record demonstrates a corporate relationship." Dkt. 73 at 20 (sealed) (quoting *Fleet Connect Sols. LLC v. S. Tire Mart, LLC*, No. 2:22-cv-0312, 2023 WL 3105139, at *2 (E.D. Tex. Apr. 8, 2023)); Dkt. 83 at 20 (redacted). Yet, as Casale US points out, every (non-precedential) case that Topsoe cites in support of this point is an infringement case, not an inequitable conduct or unfair competition case. *See* Dkt. 66 at 10 (sealed); Dkt. 85 at 10 (redacted). Moreover, group pleading is plainly disallowed for the

inequitable conduct claim as group pleading flies in the requirement that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Because the unfair competition claims hinge on the inequitable conduct claim, for which Topsoe makes no allegations as to Casale US, the only way Casale US can be held liable on Topsoe's claims is if Casale US is Casale SA's alter ego.

Unlike the cases on which Topsoe relies, its complaint does not "specifically contain[] a count entitled 'piercing the corporate veil' in which [Topsoe] asserts . . . an alter ego theory." *Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, No. 4:15-cv-2641, 2016 WL 5844707, at *2 (S.D. Tex. Oct. 6, 2016). Not once does Topsoe use the words "alter ego" or "corporate veil" or anything of the sort. The only time Topsoe uses the word "impute" is when it says that "Casale US's *jurisdictional contacts* may be imputed to Casale SA." Dkt. 28 at 6 (emphasis added). A pro se litigant did not draft Topsoe's complaint. It was drafted by sophisticated lawyers who surely know how to put a party on notice of its theories of liabilities. Topsoe's First Amended Complaint does not cut the mustard.

Even if I read into Topsoe's pleading a theory of liability that it did not even mention, Topsoe still has not alleged facts that would permit the reasonable inference that Casale US is Casale SA's alter ego. "Corporate separateness is an issue of regional-circuit law." *Celgene Corp. v. Mylan Pharm. Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021). Fifth Circuit "cases are clear that one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). The Fifth Circuit has "developed a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent," including whether:

(1) the parent and the subsidiary have common stock ownership;

(2) the parent and the subsidiary have common directors or officers;

(3) the parent and the subsidiary have common business departments;

(4) the parent and the subsidiary file consolidated financial statements and tax returns;

(5) the parent finances the subsidiary;

(6) the parent caused the incorporation of the subsidiary;

(7) the subsidiary operates with grossly inadequate capital;

(8) the parent pays the salaries and other expenses of the subsidiary;

(9) the subsidiary receives no business except that given to it by the parent;

(10) the parent uses the subsidiary's property as its own;

(11) the daily operations of the two corporations are not kept separate; and

(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*Id.* at 691–92.

Topsoe's meager allegations speak to few of these factors, and most of those allegations are conclusory. For example, Topsoe alleges on "information and belief" that "Casale US appears to be undercapitalized" and "Casale SA uses Casale US's property as its own." Dkt. 28 at 5–6. Yet, Topsoe offers little to no facts about the information that formed these beliefs. "[A]llegations made on information and belief are legal conclusions disguised as factual allegations." *Aeritas, LLC v. Darden Corp.*, No. 6:20-cv-00938, 2021 WL 4868430, at *2 (W.D. Tex. Oct. 18, 2021); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (holding that district court "properly concluded" that allegations made "on information and belief" were "merely conclusory"). Topsoe's observations about shared websites, email domains, and employees do not make its conclusory allegations more plausible.

Because Topsoe did not even plead alter ego liability, much less plead facts to plausibly suggest that Casale SA and Casale US are one and the same, Topsoe's claims against Casale US should be dismissed.

## CONCLUSION

For the reasons discussed above, I recommend that Casale SA's motions to dismiss (Dkts. 31, 64) be denied and Casale US's motion to dismiss (Dkt. 34) be granted. Topsoe's motion for leave to file supplemental briefing (Dkt. 150) is denied as moot.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this ___2___ day of ~~August~~ September 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE